<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| ANGEL L. LOPEZ, :<br>:<br>Plaintiff, :<br>:<br>v. :<br>:<br>COMMISSIONER OF :<br>SOCIAL SECURITY, :<br>Defendant. :<br>: | **Civil Action No. 17-8461 (SRC)**<br><br>**OPINION** |

<u>**CHESLER, District Judge**</u>

  This matter comes before the Court on the appeal by Plaintiff Angel L. Lopez ("Plaintiff") of the final decision of the Commissioner of Social Security ("Commissioner") determining that he was not disabled under the Social Security Act (the "Act"). This Court exercises jurisdiction pursuant to 42 U.S.C. § 405(g) and, having considered the submissions of the parties without oral argument, pursuant to L. CIV. R. 9.1(b), finds that the Commissioner's decision will be affirmed.

  In brief, this appeal arises from Plaintiff's application for disability insurance benefits, alleging disability beginning February 28, 2012. A hearing was held before ALJ Richard West (the "ALJ") on March 4, 2016, and the ALJ issued an unfavorable decision on May 2, 2016. Plaintiff sought review of the decision from the Appeals Council. After the Appeals Council denied Plaintiff's request for review, the ALJ's decision became the Commissioner's final decision, and Plaintiff filed this appeal.

1

In the decision of May 2, 2016, the ALJ found that, at step three, Plaintiff did not meet or equal any of the Listings. At step four, the ALJ found that Plaintiff retained the residual functional capacity to perform light work, with certain limitations. At step four, the ALJ also found that this residual functional capacity was not sufficient to allow Plaintiff to perform any of his past relevant work. At step five, the ALJ determined, based on the testimony of a vocational expert, that there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with his medical impairments, age, education, past work experience, and residual functional capacity. The ALJ concluded that Plaintiff had not been disabled within the meaning of the Act.

On appeal, Plaintiff argues that the Commissioner's decision should be reversed and the case remanded on two grounds: 1) the ALJ's determination at step three is in error; and 2) at step four, the ALJ overlooked evidence in making the residual functional capacity determination.

Plaintiff's case on appeal suffers from two principal defects: 1) its failure to deal with the issue of the burden of proof at the first four steps of the sequential evaluation process; and 2) its failure to deal with the harmless error doctrine. As to the burden of proof, Plaintiff bears the burden in the first four steps of the analysis of demonstrating how his impairments, whether individually or in combination, amount to a qualifying disability. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

As to the harmless error doctrine, the Supreme Court explained its operation in a similar procedural context in Shinseki v. Sanders, 556 U.S. 396, 409 (2009), which concerned review of a governmental agency determination. The Court stated: "the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." Id. In such a

case, "the claimant has the 'burden' of showing that an error was harmful." Id. at 410.

Plaintiff thus bears the burden, on appeal, of showing not merely that the Commissioner erred, but also that the error was harmful. At the first four steps, this requires that Plaintiff also show that, but for the error, he might have proven his disability. In other words, when appealing a decision at the first four steps, if Plaintiff cannot articulate the basis for a decision in his favor, based on the existing record, he is quite unlikely to show that an error was harmful.

Plaintiff argues broadly that, at step three, the ALJ erred in determining that Plaintiff did not meet or equal a listed impairment. Under Shinseki, even if Plaintiff succeeded in persuading that the ALJ erred at step three, Plaintiff also bears the burden of showing that this error was harmful, and Plaintiff has not done so. To show that such an error was harmful, Plaintiff would need to, at a minimum, point to evidence of record that might have sustained his burden of proof of disability. At a minimum, again, he would need to explain which impairments, combined, should have been found to be medically equivalent to what Listing.

The Third Circuit has held: "An error is 'harmless' when, despite the technical correctness of an appellant's legal contention, there is also 'no set of facts' upon which the appellant could recover." Brown v. Astrue, 649 F.3d 193, 195 (3d Cir. 2011). Conspicuously absent from Plaintiff's brief is any statement of what Listing Plaintiff contends he meets or equals. Plaintiff fails to explain how the step three analysis might have been performed differently so as to make a material difference in the disability determination. This Court is not persuaded that the step three analysis was inadequate but, even if it was defective, given that Plaintiff has made no case on appeal that he met his burden of proof at step three, such defects could not be more than harmless error. Plaintiff has not even pointed to the Listing that he

claims to have met or equaled, much less pointed to evidence of record that might have supported such a determination. As such, Plaintiff has failed to persuade that any possible errors at step three materially harmed him. As in Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005), "a remand is not required here because it would not affect the outcome of the case."

Next, Plaintiff contends that he is obese, and that the ALJ erred by not considering his obesity at step three. Plaintiff contends that this is error under the Third Circuit's decision in Diaz, in which it held: "an ALJ must meaningfully consider the effect of a claimant's obesity, individually and in combination with her impairments, on her workplace function at step three and at every subsequent step." Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009). The Diaz decision did not, however, overturn Rutherford, 399 F.3d at 553, in which the absence of discussion of a claimant's obesity in the ALJ's decision was found to *not* constitute reversible error. Rather, the Diaz Court acknowledged the continuing vitality of Rutherford. 577 F.3d at 504. In the absence of any demonstration that Plaintiff's obesity, by itself or in combination with other impairments, meets or equals a Listing, Plaintiff has not persuaded this Court that the ALJ erred on this issue, or that the error was harmful.

Plaintiff's brief then moves to challenge the ALJ's decisions at step four, but begins with a discussion of step five. Here, however, Plaintiff does not allege any error, but uses it as an entrée to his challenge to the residual functional capacity determination at step four. Plaintiff points to the fact that the ALJ found that Plaintiff could lift no more than five pounds, and that this assessment was based on the opinions of Plaintiff's treating neurologist, Dr. Khelemsky, as well as those of the state agency reviewers. This does not appear to be an argument for error. Plaintiff follows this by arguing that the ALJ gave great weight to that part of Dr. Khelemsky's

4

opinion, but not to Dr. Khelemsky's statement that certain mental health problems limit Plaintiff's ability to work. (Tr. 574.) This is not supported by what the ALJ wrote. The ALJ stated: "I also give great weight to Dr. Khelemsky who opined the claimant has posttraumatic cervical radiculopathy, left shoulder labrum tear and post-traumatic cognitive decline, insomnia and depression." (Tr. 26.) The ALJ followed that by reviewing the other mental health evidence, and the ALJ – who had already found moderate difficulties in maintaining concentration, persistence or pace at step three (Tr. 24) – concluded that Plaintiff had "concentration issues" which could be impacted by his medications. (Tr. 26.) The residual functional capacity determination contains a limitation which states that Plaintiff cannot perform multiple tasks at the same time.

Plaintiff does not articulate what additional limitation to the residual functional capacity determination was warranted, nor what evidence would have supported such a limitation. Instead, Plaintiff vaguely asserts that Plaintiff's concentration difficulties preclude his working, but does not muster the evidence that would support that conclusion. The one piece of evidence on this subject that Plaintiff cites, Dr. Khelemsky's opinion, was given great weight by the ALJ, who also found moderate concentration difficulties. Plaintiff has not persuaded this Court that there was any error at step four in this regard or that he was harmed by one.

Last, Plaintiff contends that the ALJ's consideration of Plaintiff's pain and subjective complaints was deficient. The ALJ, however, gave "some weight" to Dr. Katona's assessment that Plaintiff has a limited range of motion in his left shoulder due to pain, and accounted for this by including in the residual functional capacity determination a limitation that Plaintiff can only occasionally reach overhead with his upper left extremity. (Tr. 25.) Plaintiff argues that the

ALJ overlooked the full scope of Dr. Katona's opinion, and quotes from his report:

> The pain moderately limits activities, lacks active range of motion and lacks strength. . . Pertinent findings include stiffness, limited range of motion, loss of range of motion, loss of strength, swelling and point tenderness.

(Tr. 555.)   Based on this statement, Plaintiff argues as follows:

> It seems that Dr. Katona articulated a number of restrictions relevant to plaintiff's left upper extremity in addition to the limitation to occasional over head reaching. Those limitations include reaching behind, lifting, pulling, extension, abduction and external rotation and also deficits in active range of motion and strength. These are never mentioned.

(Pl.'s Br. 37-38.)

The Court makes two observations.   First, Dr. Katona expressed no opinion about the impact of these findings on Plaintiff's ability to work.   Second, the record does not fully support Plaintiff's characterization of what Dr. Katona opined.   The only limitations that appear in the part of Dr. Katona's report that Plaintiff quoted are: "The pain moderately limits activities, lacks active range of motion and lacks strength."   (Tr. 555.)   The ALJ included a limitation regarding range of motion.   As to the other two elements, the moderate limitation on activities and the lack of strength, Plaintiff does not articulate what limitations this evidence would support.   These two observations appear quite vague.   Furthermore, the limitation in the residual functional capacity determination to lifting five pounds appears to be consistent with the observation that Plaintiff lacks strength.   The record shows that the state agency reviewers considered Dr. Katona's report and accepted the limitation to the range of motion; they found no other manipulative limitation.   (Tr. 85-86.)   Given the findings of the state agency reviewers, the residual functional capacity determination is supported by substantial evidence.   The fact that the ALJ did not expressly address every element in Dr. Katona's assessment cannot be more than

harmless error.

      Plaintiff has failed to persuade this Court that the ALJ erred in his decision, or that he was harmed by any errors.   This Court finds that the Commissioner's decision is supported by substantial evidence and is affirmed.

                                                         s/ Stanley R. Chesler
                                             STANLEY R. CHESLER, U.S.D.J.

Dated: June 12, 2020